UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| KENDALL MILLS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 24-CV-0188-CVE-CDL |
| | ) | |
| AMAZON.COM SERVICES, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

Before the Court is defendant Amazon.com Services, LLC's motion to dismiss (Dkt. # 10), plaintiff Kendall Mills' response (Dkt. # 13), and defendant's reply (Dkt. # 14). This case arises from plaintiff, an employee of defendant, alleging in a state court petition (complaint) violations of the Oklahoma Anti-Discrimination Act (counts 1, 2, 3, and 4), Title VII of the Civil Rights Act of 1964 (counts 5 and 6), the Americans with Disabilities Act (count 7), and 42 U.S.C. § 1981 (count 8). Plaintiff also alleges intentional infliction of emotional distress (count 9). Dkt. # 2-1.

**I.**

The following facts are taken from the complaint. Plaintiff is a "dark-skinned African American male" and suffers from post-traumatic stress disorder ("PTSD") as a disabled veteran. Dkt. # 2-1, at 3. On August 16, 2021, defendant hired plaintiff to be an area manager at defendant's "Tul5" location. Id. Defendant was aware that plaintiff was a disabled veteran suffering from PTSD. Id. In November 2021, plaintiff informed his HR manager, Cheryl Cole, that a coworker was circulating a "false and malicious rumor regarding [plaintiff's] sexual impropriety" and that the rumor was causing him severe distress and anxiety. Id. Cole informed plaintiff that she would address his concern, but took no action. Id. That same month, defendant provided Thanksgiving

pies to non-minority staff members but denied pies to plaintiff.  Id.  In late December 2021 or early January 2022, defendant transferred plaintiff to night shift.  Id.  Tasked with assigning employees to night shift, Cole informed plaintiff that he was chosen over Kayla Whitemand, a Caucasian female, purportedly because she was a single parent.  This was done despite the fact that plaintiff also had childcare concerns due to having two children, and that Whitemand had previously worked night shift for two years at another facility operated by defendant.  Id.

In February 2022, HR manager and plaintiff's supervisor, Rat Bauer, asked plaintiff to dress up as a clown for Black History Month.  Id.  Defendant allegedly attempted to discard the evidence of this suggestion by "getting the clown costume [] 'out of the building.'"  Id. at 6.  Between October 2021 and March 2022, plaintiff alleges that he was also repeatedly denied certain benefits and gifts such as branded merchandise that defendant provided to plaintiff's non-minority peers.  Id. at 3-4.  These omissions were addressed only when plaintiff and another African American employee complained to the operation manager, Linda Baker, who instructed the HR team to issue those gifts.  Id. at 4.  He also alleges that he was denied training opportunities when transferred to a new shift, and that he was specifically assigned to police and reprimand other minority employees while a white, Caucasian employee was assigned to police and reprimand other white, Caucasian employees.  Id. at 5.

In March 2022, plaintiff filed an ethics complaint with defendant regarding the "repeated harassment and discriminatory treatment that plaintiff, as well as several other African American employees, were suffering."  Id. at 4.  Defendant's HR team subsequently retaliated by opening an investigation into plaintiff for being allegedly aggressive towards other employees.  Id.  In June 2022, following the filing of his complaint, another member of HR, Mary James, told an employee

that plaintiff was "acting crazy and causing issues at work because he has PTSD." Id. On November 22, 2022, plaintiff filed a complaint with the Office of Civil Rights Enforcement, and received his notice of right to sue on January 3, 2024. Id.

On April 2, 2024, plaintiff filed a petition in state court (Dkt. # 2-1) alleging numerous claims, including discrimination on the basis of race, color, and disability under the Oklahoma Anti-Discrimination Act (OADA), OKLA. STAT. ANN. tit. 25, § 1302 (counts 1 and 2); retaliation on the basis of race, color, and disability under the OADA, OKLA. STAT. ANN. tit. 25, §§ 1601(1), 1350 (count 3); aiding and abetting discrimination on the basis of race, color, and disability under the OADA, OKLA. STAT. ANN. tit. 25, §§ 1602(2), 1350 (count 4); discrimination on the basis of race and color under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) (counts 5 and 6); retaliation on the basis of disability under the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12203(a), 12203(b) (count 7); discrimination, retaliation, and/or a hostile work environment on the basis of race, color, and disability under 42 U.S.C. § 1981 (§ 1981) (count 8); and intentional infliction of emotional distress (IIED) (count 9).

Defendant filed a notice of removal on April 24, 2024 (Dkt. # 2) on the grounds of federal question jurisdiction. Defendant filed a motion to dismiss the case (Dkt. # 10) under Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim. Dkt. # 10, at 1. Plaintiff filed a response to the motion (Dkt. # 13), and defendant filed a reply (Dkt. # 14).

## II.

In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court must determine whether the claimant has stated a claim upon which relief may be granted.[1] A motion to dismiss is properly granted when a complaint provides no "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). A complaint must contain enough "facts to state a claim to relief that is plausible on its face" and the factual allegations "must be enough to raise a right to relief above the speculative level." Id. at 555, 570 (citations omitted). "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 562. Although decided within an antitrust context, Twombly "expounded the pleading standard for all civil actions." Ashcroft v. Iqbal, 556 U.S. 662, 684 (2009). For the purpose of making the dismissal determination, a court must accept all the well-pleaded allegations of the complaint as true, even if doubtful in fact, and must construe the allegations in the light most favorable to the claimant. Twombly, 550 U.S. at 555; Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 (10th Cir. 2007); Moffett v. Halliburton Energy Servs., Inc., 291 F.3d 1227, 1231 (10th Cir. 2002). Finally, "the 12(b)(6) standard does not require that [p]laintiff establish a prima facie case in [the] complaint, [but] the elements of each alleged cause of action help to determine whether [p]laintiff has set forth a plausible claim." Khalik v. United Air Lines, 671 F.3d 1188, 1192 (10th Cir.2012) (citations omitted).

---

[1] Plaintiff argues in his response that defendant's motion to dismiss should be treated as a motion for summary judgment because defendant provided its own narrative of events in an effort to discredit plaintiff's claims. Dkt. # 13, at 1-3. Because the Court has not considered matters outside the pleadings, it will not convert the motion to a motion for summary judgment.

### III.

Construing plaintiff's complaint liberally, his claims can be grouped into the following categories of actionable conduct: aiding and abetting discrimination; disparate treatment on the basis of race and color; disparate treatment on the basis of disability; retaliation on the basis of race and color; retaliation on the basis of disability; hostile work environment; and intentional infliction of emotional distress. The Court will address these claims in turn.

  **A.**  **Retaliation and aiding and abetting discrimination under the OADA**

As an initial matter, defendant argues that Oklahoma law prohibits plaintiff from bringing either a retaliation claim or an aiding and abetting discrimination claim under the OADA. The OADA, OKLA. STAT. ANN. tit. 25, §§ 1101–1706, prohibits discrimination in employment, housing, public accommodation, and other instances in the state of Oklahoma. Article III therein (§1301–§1350) reflects "discrimination in employment." Article VI (§1601–§1605) reflects "other discriminatory practices." The Oklahoma Supreme Court in Edwards v. Andrews, 382 P.3d 1045 (Okla. 2016), held that the "only remedies provided in an individual action for employment discrimination are provided by Article III at section 1350." Id. at 1047. The Court further noted that "[§ 1601] neither defines retaliation, nor does it provide any remedy to compensate an employee who suffers retaliation at the hands of an employer." Id. (emphasis added). "[T]he Oklahoma Legislature has prohibited retaliation but has not supplied any monetary remedy for an employee." Id. A retaliation claim against an employer under the OADA is therefore not cognizable under Oklahoma

law, despite the fact that § 1601(1) prohibits the discriminatory practice of retaliation.[2]  See Sultuska v. JPMorgan Chase Bank, No. CIV-18-669-C, 2019 WL 4888579, at *2 n.2 (W.D. Okla. Oct. 3, 2019).  Because aiding and abetting discrimination is not a remedy under Article III–and particularly not enumerated in § 1350–it also follows that under Oklahoma law, such a claim against an employer is likewise not cognizable under the OADA.  Plaintiff acknowledges as much in his response.  See Dkt. # 13, at 5.  The Court therefore finds that plaintiff's claims for retaliation under the OADA and aiding and abetting discrimination under the OADA should be dismissed.

> **B.  Disparate treatment on the basis of race, color, and disability under the OADA, Title VII, and § 1981**

Plaintiff claims that he was subject to disparate treatment on the basis of race, color, and disability in violation of the OADA (counts 1 and 2), Title VII (counts 5 and 6), and § 1981 (count 8).  Title VII prohibits discrimination "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e–2(a)(1).  "The OADA is analyzed similarly to Title VII

---

[2]  The Court acknowledges that there may be inconsistencies with how the Oklahoma Supreme Court interpreted this statute.  A district court in the Western District of Oklahoma found that the language in Edwards relating to employment retaliation was "dicta" and should not be controlling.  See McDaniel v. Legend Energy Servs., LLC, No. CIV-20-1278-R, 2021 WL 535862, at *2 (W.D. Okla. Feb. 12, 2021) (finding that the conclusion in Edwards appears "internally inconsistent" and "contrary to earlier Oklahoma Supreme Court precedent").  The district court in McDaniel decided that the Oklahoma Supreme Court should be given the opportunity to clarify the issue.  However, the case ultimately settled before any question was certified.  Id.  Absent any contrary precedent, the Court finds that the Oklahoma Supreme Court is clear in Edwards that there is no remedy for employment retaliation under the OADA.  See also Davis v. Mercy Rehab. Hosp., No. CIV-19-561-D, 2019 WL 13113533, at *4 (W.D. Okla. Nov. 20, 2019) ("The OADA does not 'provide any remedy to compensate an employee who suffers retaliation at the hands of an employer.'") (quoting Edwards, 382 P.3d at 1047).

claims."[3] Jones v. Needham, 856 F.3d 1284, 1292 (10th Cir. 2017). However, the OADA includes "disability" as a protected class, while Title VII and § 1981 do not. Therefore, under Title VII and § 1981, plaintiff can allege only that he was subject to disparate treatment on the basis of race or color. The Court will first address this claim.

"[I]n racial discrimination suits, the elements of a plaintiff's case are the same [] whether that case is brought under § 1981 [] or Title VII." Drake v. City of Fort Collins, 927 F.2d 1156, 1162 (10th Cir. 1991). Therefore, a claim for racial discrimination under Title VII, the OADA, and § 1981 may be assessed congruently. While a plaintiff need not establish a prima facie case at the motion to dismiss stage, it is helpful to set forth the basic elements of a claim for discrimination to ascertain whether a plaintiff has stated a plausible claim. Khalik, 671 F.3d at 1192. The burden-shifting framework of McDonnell-Douglas requires that the plaintiff show that he "(1) fell within a protected group, (2) was qualified for his position, and (3) suffered an adverse employment action under circumstances giving 'rise to an inference of unlawful discrimination.'" Rodriguez v. Brown, No. 21-1124, 2022 WL 3453401, at *4 (10th Cir. Aug. 18, 2022)[4] (quoting Affairs v. Burdine, 450 U.S. 248, 253 (1981)). "One method by which a plaintiff can demonstrate an inference of discrimination is to show that the employer treated similarly situated employees more favorably." Luster v. Vilsack, 667 F.3d 1089, 1095 (10th Cir. 2011). To survive a motion to dismiss, "[a] complaint raising a claim of discrimination does not need to conclusively establish the prima facie case of

---

[3] The OADA prohibits employers from discriminating "against an individual with respect to compensation or the terms, conditions, privileges or responsibilities of employment, because of race, color, religion, sex, national origin, age, genetic information or disability." OKLA. STAT. ANN. tit. 25, § 1302(A)(1).

[4] This and other cited unpublished decisions are not precedential, but may be cited for their persuasive value. 10th Cir. R. 32.1(A).

discrimination, but it must contain more than '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" Bekkem v. Wilkie, 915 F.3d 1258, 1274 (10th Cir. 2019) (quoting Iqbal, 556 U.S. at 678).

Defendant disputes only the third element, and argues that plaintiff has failed to establish that he suffered an adverse employment action. Construing the facts in a light most favorable to plaintiff, the Court finds otherwise. The United States Supreme Court recently noted that "courts rewrote Title VII [to] compel[] workers to make a showing that the statutory text does not require." Muldrow v. City of St. Louis, Missouri, 144 S. Ct. 967, 975 (2024). The Court found that:

> [t]o make out a Title VII discrimination claim, a transferee must show some harm respecting an identifiable term or condition of employment. What the transferee does not have to show, according to the relevant text, is that the harm incurred was 'significant.' Or serious, or substantial, or any similar adjective suggesting that the disadvantage to the employee must exceed a heightened bar. 'Discriminate against' means treat worse[]. But neither that phrase nor any other says anything about how much worse. There is nothing in the provision to distinguish, as the courts below did, between transfers causing significant disadvantages and transfers causing not-so-significant ones. And there is nothing to otherwise establish an elevated threshold of harm. To demand 'significance' is to add words—and significant words, as it were—to the statute Congress enacted. It is to impose a new requirement on a Title VII claimant, so that the law as applied demands something more of her than the law as written.

Id. at 974 (internal citations omitted). Plaintiff claims that he was repeatedly denied training opportunities and staff benefits, was transferred to night-shift due to his race–despite his childcare concerns–and was subject to false and malicious rumors spread by co-workers and HR personnel.

8

These allegations of adverse employment actions are sufficient to state a plausible claim for discrimination on the basis of race and color under Title VII,[5] § 1981, and the OADA.[6]

Plaintiff, however, has failed to allege sufficient facts to support a plausible claim for disparate treatment on the basis of disability under the OADA.  Plaintiff's multiple allegations of discrimination pertain only to his race.  As to his disability, he states only that an HR member told an employee that plaintiff "was acting crazy and causing issues at work because he has PTSD."[7] This alone is insufficient to support a plausible claim of disparate treatment on the basis of disability, and therefore plaintiff's claim of disparate treatment on the basis of disability under the OADA should be dismissed.

## C. Retaliation on the basis of race and color under § 1981

Under § 1981, an employer may not retaliate against an employee for engaging in a protected activity.  To set forth a prima facie case of retaliation, an employee must show "(1) that [he] engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected

---

[5] In a footnote, defendant argues that some of plaintiff's specific allegations in his petition may have occurred more than 300 days prior to the filing of his EEOC charge and may be time-barred as discrete acts of discrimination.  The Court acknowledges that defendant has expressly reserved its right to argue that [p]laintiff has failed to exhaust his administrative remedies–as required for his Title VII claims–as to certain discrete facts.  See Dkt. # 10, at 4.

[6] Because the Court has found that plaintiff's aforementioned allegations are sufficient to show that he could bring a claim for discrimination, the Court need not address whether the denial of Thanksgiving pies constitutes an adverse employment action under Title VII.

[7] Plaintiff did state that due to his PTSD, he suffered "severe distress and anxiety" from a workplace rumor, but the rumor itself did not pertain to his disability, nor did defendant's conduct.

activity and the materially adverse action." Somoza v. University of Denver, 513 F.3d 1206, 1212 (10th Cir. 2008) (internal quotations omitted). Although plaintiff has no burden to come forward with evidence at this stage of the case, the Court finds that the elements of the prima facie case provide a reasonable framework for evaluating whether plaintiff has sufficiently alleged a claim of retaliation.

Defendant argues that opening an investigation does not qualify as an adverse employment action. "For a retaliation claim, [] an adverse employment action is something that would have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" Lincoln v. Maketa, 880 F.3d 533, 540 (10th Cir. 2018) (quoting Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006)); Twigg v. Hawker Beechcraft Corp., 659 F.3d 987, 998 (10th Cir. 2011) ("[T]he principles set forth in Title VII retaliation cases apply with equal force in § 1981 retaliation cases"). Defendant notes that the Tenth Circuit has generally held that initiating a workplace investigation is not a materially adverse action.[8] However, "[c]ontext matters." White, 548 U.S. at 69. "'The real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed.'" Id. (quoting Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75, 81-82 (1998)). Here, plaintiff alleges that he filed an ethics complaint

---

[8] Defendant cites to Lincoln v. Maketa for the proposition that workplace investigations initiated after an employee has filed a complaint do not give rise to a materially adverse employment action; however, that case was decided in the First Amendment and qualified immunity context. See Lincoln v. Maketa, 880 F.3d 533, 541 (10th Cir. 2018) ("Sgt. Stone and the district court relied only on general standards, noting that an adverse employment action is one that would deter reasonable persons from exercising their First Amendment rights. But the analysis of qualified immunity is based on specific facts, not abstract principles.")

in March 2022, reporting discriminatory treatment he and other African American employees suffered, and defendant promptly opened an investigation into plaintiff for being allegedly aggressive towards other team members. See also Anderson v. Coors Brewing Co., 181 F.3d 1171, 1179 (10th Cir. 1999) ("A retaliatory motive may be inferred when an adverse action closely follows protected activity.") He also claims that an HR staff member called him crazy. These actions taken together could "dissuade a reasonable worker from making or supporting a charge of discrimination." White, 548 U.S. at 68. Plaintiff's factual allegations are therefore sufficient to state a plausible claim for retaliation on the basis of race and color under § 1981.

  **D.**  **Retaliation on the basis of disability under the ADA**

Retaliation under § 1981 and the ADA[9] is assessed using the same standard. Selenke v. Medical Imaging of Colorado, 248 F.3d 1249, 1264 (10th Cir. 2001) (outlining the three elements to assess an ADA retaliation claim). Plaintiff claims that he "filed an ethics complaint with [d]efendant regarding the repeated harassment and discriminatory treatment that [p]laintiff, as well as several other African American employees, was suffering." Plaintiff has failed to allege that his protected opposition to discrimination–filing the ethics complaint–related to discrimination on the basis of his disability. Moreover, the factual allegations giving rise to his ethics complaint–including being asked to dress up as a clown for Black History Month, getting transferred to night shift, and denial of training opportunities and merchandising benefits–regard only racial discriminatory treatment. Plaintiff has failed to allege sufficient facts that he engaged in protected opposition to

---

9  Defendant does not dispute that plaintiff has a disability as required to bring a claim under the ADA.

11

discrimination on the basis of disability, and has therefore failed to state a plausible clam under the ADA.

        **E.**        **Hostile work environment under Title VII, § 1981, and the OADA**

"The same substantive standards apply to a hostile work environment claim regardless of whether the plaintiff has brought it under § 1981 or Title VII." Lounds v. Lincare, Inc., 812 F.3d 1208, 1221 (10th Cir. 2015). The standard can also be applied to a hostile work environment claim under the OADA. To state a prima facie case of hostile work environment, a plaintiff must allege: (1) he is a member of a protected group; (2) he was subject to unwelcome harassment; (3) the harassment was based on his membership in a protected group; and (4) due to the harassment's severity or pervasiveness, the harassment altered a term, condition, or privilege of plaintiff's employment and created an abusive working environment. See Harsco Corp. v. Renner, 475 F.3d 1179, 1186 (10th Cir. 2007). There is no "mathematically precise test" for a hostile work environment claim, and courts consider the "totality of circumstances" when assessing the harassment's severity or pervasiveness. Hernandez v. Valley View Hosp. Ass'n, 684 F.3d 950, 957, 959 (10th Cir.2012). These include: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993). This is an objective standard. While plaintiff is under no obligation to establish a prima facie case at the motion to dismiss stage, these factors are helpful to assess whether he has stated a plausible claim for a section 1981 hostile work environment claim.

Plaintiff has not alleged sufficient facts to support a plausible hostile work environment claim under Title VII, § 1981, and the OADA. While being asked to dress up as a clown during Black

History Month could indeed be deemed racially offensive, he admits that he did not end up doing so. Plaintiff makes other generic allegations that he was subjected to an "increasingly-hostile work environment," but has not alleged facts that "'a rational jury could find that the workplace is permeated with discriminatory intimidation, ridicule, and insult.'" Delsa Brooke Sanderson v. Wy. Highway Patrol, 976 F.3d 1164, 1176 (10th Cir. 2020) (quoting Bird v. West Valley City, 832 F.3d 1188, 1025 (10th Cir. 2016)). "'Instead of sporadic racial slurs, there must be a steady barrage of opprobrious racial comments.'" Lounds, 812 F.3d at 1223 (quoting Bolden v. PRC Inc., 43 F.3d 545, 551 (10th Cir.1994)). Plaintiff has not alleged more than "a few isolated incidents of racial enmity." Witt v. Roadway Express, 136 F.3d 1424, 1432 (10th Cir.1998) (internal quotations omitted). Plaintiff has not alleged specific facts that his workplace is permeated with discriminatory intimidation, and his factual allegations do not rise to severe or pervasive harassment as required by the fourth element of a hostile work environment claim. Plaintiff has therefore not alleged a plausible claim for a hostile work environment under §1981, Title VII, or the OADA, and his claims should be dismissed.

### F. Intentional infliction of emotional distress

Plaintiff's final claim is for intentional infliction of emotional distress. According to the Supreme Court of Oklahoma, "[t]o recover damages for intentional infliction of emotional distress, a plaintiff must prove: (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's conduct caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe." Comput. Publ'ns, Inc. v. Welton, 49 P.3d 732, 735 (Okla. 2002). "The trial court acts as a gatekeeper regarding the outrageousness of the defendant's conduct and the severity of the plaintiff's distress." Id. The second element of this tort, whether the

13

conduct was extreme and outrageous, "requires proof that the defendant's conduct was so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and that such conduct is regarded as atrocious and utterly intolerable in a civilized community." Id. The fourth element, whether the resulting emotional distress was severe, "requires proof that the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it." Id. at 736 (internal quotations and alterations omitted). "While emotional distress includes all highly unpleasant mental reactions, such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry, and nausea, it is only where the emotional distress is extreme that liability arises." Id. (internal quotations omitted). Plaintiff has generally alleged that he suffered "severe emotional distress [] beyond that which a reasonable person could be expected to endure," but has not alleged any specific facts supporting that allegation. This allegation is no more than a "threadbare recital[] of the elements of [this] cause of action." Iqbal, 556 U.S. at 678. Plaintiff has not alleged with specificity what severe distress he experienced, or otherwise demonstrated that the defendant's conduct was extreme and outrageous. His singular allegation of anxiety and distress, isolated instances of rumors perpetrated by various employees, and request to dress up as a clown does not meet the high bar required for extreme conduct and severe distress. Plaintiff has failed to state a plausible claim of intentional infliction of emotional distress, and the claim should be dismissed.

## IV.

**IT IS THEREFORE ORDERED** that defendant's motion to dismiss (Dkt. # 10) is **granted in part and denied in part.** Defendant's motion is granted as to plaintiff's claims of disparate treatment on the basis of disability under the OADA (part of count 1), retaliation under the OADA

(count 3), aiding and abetting discrimination under the OADA (count 4), retaliation under the ADA (count 7), hostile work environment under the OADA, Title VII, and § 1981 (part of counts 2, 6, and 8) and intentional infliction of emotional distress (count 9). Defendant's motion is denied as to plaintiff's claims of disparate treatment on the basis of race and color under the OADA (part of counts 1 and 2), Title VII (counts 5 and 6), and § 1981 (part of count 8), and retaliation on the basis of race and color under § 1981 (part of count 8).

**IT IS FURTHER ORDERED** that plaintiff's claims of disparate treatment on the basis of disability under the OADA (part of count 1), retaliation under the OADA (count 3), aiding and abetting discrimination under the OADA (count 4), retaliation under the ADA (count 7), hostile work environment under the OADA, Title VII, and § 1981 (part of counts 2, 6, and 8) and intentional infliction of emotional distress (count 9) are **dismissed.**

**IT IS FURTHER ORDERED** that plaintiff's remaining claims are disparate treatment on the basis of race and color under the OADA, Title VII, and § 1981, and retaliation on the basis of race and color under § 1981.

**IT IS FURTHER ORDERED** that the parties shall file their joint status report no later than **July 19, 2024**.

**DATED** this 27th day of June, 2024.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE