## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| KENDALL MILLS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 24-CV-0188-CVE-CDL |
| | ) | |
| AMAZON.COM SERVICES, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Before the Court are defendant's motion for summary judgment (Dkt. # 26); plaintiff's response (Dkt. # 36); defendant's reply (Dkt. # 39); and defendant's combined motions in limine (Dkt. # 43). Defendant seeks summary judgment in its favor on plaintiff's remaining claims of: disparate treatment on the basis of race and color under the Oklahoma Anti-Discrimination Act (OADA), Title VII of the Civil Rights Act of 1964 (Title VII), and 42 U.S.C. § 1981; and retaliation on the basis of race and color under § 1981. Dkt. # 15, at 15.

### I.

As an initial matter, the Court addresses plaintiff's failure to comply with LCvR56-1(c). This rule states that:

> The response brief in opposition to a motion for summary judgment . . . shall begin with a section responding, by correspondingly numbered paragraph, to the facts that the movant contends are not in dispute and shall state any fact that is disputed. All material facts set forth in the statement of the material facts of the movant shall be deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of material facts of the opposing party, using the procedures set forth in this rule.

LCvR56-1(c). While defendant properly lists in numbered paragraphs the material facts that defendant contends present no genuine dispute, plaintiff fails to include a section responding to

defendant's proffered undisputed facts.  Moreover, plaintiff fails to include a fact section in his response.  Instead, plaintiff simply relies on allegations and sparse citations to four exhibits. See e.g., Dkt. ## 36, at 4, 5-6, 8-9.  Therefore, pursuant to LCvR56-1(c), defendant's proffered undisputed material facts are deemed admitted for the purpose of summary judgment to the degree that the evidence supports such an admission.  See Milam v. Pafford EMS, 729 F. App'x 632, 636 (10th Cir. 2018) (unpublished)[1] (finding that the district court did not abuse its discretion by "deem[ing] admitted the undisputed facts set forth in [the defendant's] [m]otion for [s]ummary [j]udgment because [the plaintiff] failed to produce evidence or otherwise dispute the[] facts in the manner required by [the district court's local rule]"); Amundsen v. Jones, 533 F.3d 1192, 1197-98 (10th Cir. 2008) (finding that a district court did not abuse its discretion by considering a nonmovant's statement of fact despite the nonmovant failing to comply with a local summary judgment pleading rule that allowed the court to treat the movant's proffered undisputed material facts as admitted); see also FED. R. CIV. P. 56(e)(2) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: . . . (2) consider the fact undisputed for purposes of the motion, [or] (3) grant summary judgment if the motion and supporting materials--including the facts considered undisputed--show that the movant is entitled to it.").

Therefore, the undisputed facts are as follows: on August 16, 2021, defendant hired plaintiff, who is African American, as an area manager at TUL5, one of defendant's "sortation" centers in Tulsa, Oklahoma.  Dkt. # 26, at 8; Dkt. # 26-1, at 1; Dkt. # 26-2, at 6-7; Dkt. # 36, at 3, 7.  At TUL5,

---

[1]    The Court cites this and other unpublished decisions for their persuasive value. 10th Cir. R. 32.1(A)

a single site lead supervises five operations managers who supervise twelve area managers. Dkt. # 26, at 9; Dkt. # 26-2, at 7, 9. The area managers, who are full-time, salaried employees, supervise the Amazon associates, who are part-time, hourly employees. Dkt. # 26, at 8-9; Dkt. # 26-2, at 10-12, 29. Four individuals supervised plaintiff during his employment with defendant: site lead Joshua Bailey from August 16, 2021, until September 8, 2021; operations manager Jared Harris from September 8, 2021, until March 17, 2022; operations manager Damon Finley from March 17, 2022, until June 1, 2022; and operations manager Linda Baker from June 1, 2022 to present.[2] Dkt. # 26, at 9; Dkt. # 26-1, at 3; Dkt. # 26-2, at 13; Dkt. # 26-7, at 8-10. Plaintiff testified: that Finley and Baker never used racially inappropriate or insensitive language around him; that he could not recall Harris ever making any racially insensitive comments directed towards him; and that Cheryl Cole, a human resources (HR) business partner, never made any overtly racist statement towards him. Dkt. # 26, at 18-19; Dkt. # 26-2, at 5, 14, 48. Plaintiff and Bailey generally did not interact, and Bailey averred that he supervised plaintiff only "on paper" and before TUL5 opened. Dkt. # 26-1, at 3; Dkt. # 26-2, at 7-9.

In September 2021, plaintiff and all of the other TUL5 area managers were trained at an Oklahoma City facility.[3] Dkt. # 26, at 9; Dkt. # 26-2, at 15, 19. In October 2021, TUL5 opened, and plaintiff commenced his work on the day shift. Dkt. # 26, at 14; Dkt. # 26-1, at 2; Dkt. # 26-2, at 55-56. In November 2021, TUL5 distributed pies to Amazon associates for Thanksgiving and

---

[2]    Although defendant asserts that plaintiff is still an employee, he has been on a medical leave of absence since September 21, 2022. Dkt. # 26, at 17. See page 9, infra.

[3]    Plaintiff testified that the training that area managers received in Oklahoma City differed based on the managers' shift assignment, and the training inadequately prepared him for the day shift. Dkt. # 26-2, at 17-19.

3

asked managers, including plaintiff, to wait until the event concluded before taking a pie.  Dkt. # 26, at 13; Dkt. # 26-2, at 49-50; Dkt. # 26-10, at 7-8.  In January 2022, Harris directed plaintiff to go to the break room and take a picture and write up every person that left the room late.[4]  Dkt. # 26, at 15; Dkt. # 26-2, at 76-77.  Plaintiff's actions in carrying out the directive upset some employees. Dkt. # 26, at 15; Dkt. # 26-2, at 76, 80.  Sometime after this incident, Cole and Cheri Reitmeier, a senior regional HR manager, discussed opening an investigation into plaintiff's allegedly aggressive behavior towards employees. Dkt. # 26, at 15; Dkt. # 26-2, at 80; Dkt. # 26-21, at 2.

In February 2022, plaintiff rotated to the night shift—an event provided for in his offer letter from defendant.  Dkt. # 26, at 14; Dkt. # 26-2, at 55-56; Dkt. # 26-18, at 3.  Plaintiff's offer letter stated:

> Employees who work in Fulfillment Centers are expected to be open to working a variety of shifts.  Most buildings, for instance, have night and weekend shifts, and many of our day shifts include one weekend day as a part of the regular schedule. We do our best to match shifts with personal preference, but we reserve the right to assign employees to shifts and schedules based on business needs.  All employees may be required to work overtime or on holiday, especially during our busy seasons.

Dkt. # 26-18, at 3.  Bailey, TUL5's site lead, decided to rotate plaintiff to the night shift because plaintiff was the only high-performing L5[5] area manager that Bailey believed was capable of succeeding on the night shift at that time.  Dkt. # 26, at 14; Dkt. # 26-1, at 3.  For example, Kayla

---

[4]    Plaintiff testified that Harris told him that black people would be in the front of the break room and white people would be in the back of the room.  Dkt. # 26-2, at 76-77.

[5]    Defendant categorizes its employees on a ten level scale.  Dkt. # 26-1, at 3; Dkt. # 26-2, at 10.

Whiteman, another area manager, was only a L4 at the time.[6]  Dkt. # 26, at 14; Dkt. # 26-2, at 53-54.  While plaintiff testified that additional training was necessary, and that he completed his work incorrectly for the first month or so, defendant did not offer additional training to employees rotating shifts at that time.  Dkt. # 26, at 14; Dkt. # 26-1, at 3; Dkt. # 26-2, at 15-19, 57; Dkt. # 26-13, at 3.  Further, Bailey and Harris averred that plaintiff did not need additional training, and plaintiff, Bailey, and Harris agree that plaintiff completed his work successfully.  Dkt. # 26, at 14; Dkt. # 26-1, at 3; Dkt. # 26-2, at 15-19, 57; Dkt. # 26-13, at 3.  Area managers Aaron Davis and Alex Greitl, who is white, were similarly rotated out of the day shift to the night shift.  Dkt. # 26-2, at 37, 56, 63-64.  Greitl received no additional training, and no evidence indicates that Davis received additional training.[7]  Id. at 56.

Several events occurred on unspecified dates in early 2022.  First, Ratholomeulious Bauer, an HR partner, distributed inexpensive Amazon-branded backpacks with enclosed swag[8] to employees, including to David Okpokpo, an African American area manager.  Dkt. # 26, at 11; Dkt. # 26-2, at 32-35, 38, 40-41; Dkt. # 26-10, at 17-20; Dkt. # 36-1, at 6.  Bauer initially failed to give

---

[6]   In his response, plaintiff does not argue that Whiteman is similarly situated to him.

[7]   Plaintiff testified that Davis told him that he received training from Greitl on the night shift. Dkt. # 26-2, at 56.  Plaintiff does not provide evidence as to what training, if any, was provided to Davis and does not explain the circumstances giving rise to Davis' alleged training.  Further, plaintiff cannot establish a genuine dispute of material fact by making statements in his deposition that are not based on his personal knowledge.  See Hall v. Bellmon, 935 F.2d 1106, 1111 (10th Cir. 1991) ("Material factual disputes cannot be resolved at summary judgment based on conflicting affidavits. To come within the protection of this rule, however, the nonmovant's affidavits must be based upon personal knowledge and set forth facts that would be admissible in evidence; conclusory and self-serving affidavits are not sufficient.") (internal citations omitted).

[8]   From time to time, defendant distributed branded gear, referred to as swag, to employees. Dkt. # 26, at 11.  Every employee did not receive every piece of swag.  Id.

plaintiff, Greitl, and Efam Emefiele, an African American area manager, backpacks with enclosed swag. Dkt. # 26, at 11; Dkt. # 26-2, at 32-35, 37; Dkt. # 26-10, at 17-20. Plaintiff notified Harris that he and Emefiele did not receive backpacks, and Emefiele received a backpack with enclosed swag. Dkt. # 26-2, at 33-34, 37; Dkt. # 26-10, at 17-19, 20; Dkt. # 26-13, at 3. While plaintiff testified that he never received a backpack, Bauer testified and Harris averred that plaintiff received a backpack. Compare Dkt. # 26-2, at 33-34, with, Dkt. # 26, at 11; Dkt. # 26-10, at 20; Dkt. # 26-13, at 3. Second, TUL5 occasionally provided Amazon associates with pizza at the end of their shifts, and Bauer asked managers, including plaintiff, to allow the Amazon associates to eat before taking any of the fresh pizza. Dkt. # 26, at 10; Dkt.# 26-2, at 26-28; Dkt. # 26-10, at 4-6. The leftover pizza was placed in the office for managers to eat, and Bauer informed all managers of this policy. Dkt. # 26, at 10; Dkt. # 26-2, at 27; Dkt. # 26-10, at 4-6. Third, Bauer asked plaintiff and other managers assigned to Bauer's shift if they were willing to participate in a dress-your-manager engagement event, which was scheduled for March or April.[9] Dkt. # 26, at 11-12; Dkt. # 26-10, at 8-10, 25-26; Dkt. # 26-15, at 2; Dkt. # 36-1, at 18-20. Previous examples of engagement events include giving out snacks and a pie-your-manager event. Dkt. # 26-10, at 8, 12; Dkt. # 36-1, at 15, 19. Plaintiff ultimately refused to participate in the event, and the event was cancelled and removed from the engagement calendar. Dkt. # 26, at 11-12; Dkt. # 26-10, at 11; Dkt. # 36-1, at 37. Fourth, plaintiff approached Mary James, an HR representative, about a rumor that a female associate allegedly spread in November 2021 that plaintiff sexually harassed her. Dkt. # 26, at 12; Dkt. # 26-

---

[9]      In his response, plaintiff alleges that Bauer asked him to dress up as a clown for Black History Month, but no evidence supports his allegation. Dkt. # 36, at 4, 6.

2, at 42, 44-45. James relayed plaintiff's complaint to James' supervisor, Cole, on a post-it note. Dkt. # 26, at 12; Dkt. # 26-2, at 45-46.

On March 16, 2022, plaintiff submitted a formal ethics complaint that detailed several instances of purported discrimination, including: Cole's failure to investigate plaintiff's complaint; the denial of Thanksgiving pies, fresh pizza, a secret Santa gift, and a backpack with enclosed swag; and the request to dress up as a clown. Dkt. # 26, at 10; Dkt. # 26-9, at 2-6. Defendant conducted an investigation into plaintiff's allegations and interviewed 11 individuals, including plaintiff, Harris, Bailey, Bauer, and Cole. Dkt. # 26, at 13; Dkt. # 26-9, at 15-37. Investigations into discrimination and harassment complaints are typically conducted by central investigations, which acts as a neutral, third-party unrelated to TUL5. Dkt. # 26, at 13; Dkt. # 26-10, at 3. Through this investigation, defendant found that Cole failed to properly investigate plaintiff's complaint, and that all of plaintiff's allegations of discrimination were unsubstantiated. Dkt. # 26, at 12, 13; Dkt. # 26-9, at 6, 13-14.

Around April 2022, Cole unintentionally logged into a process assistant's phone, providing the assistant with access to Cole's Chimes[10] messages concerning sensitive HR topics such as harassment complaints and personnel decisions. Dkt. # 26, at 16; Dkt. # 26-1, at 4; Dkt. # 26-2, at 35-36, 85-86. The process assistant disseminated the messages to plaintiff. Dkt. # 26, at 16; Dkt. # 26-2, at 35-36. In May 2022, plaintiff rotated back to the day shift as part of defendant's regular rotation schedule. Dkt. # 26, at 14; Dkt. # 26-2, at 54. In June 2022, plaintiff met with Bailey, Baker, Finley, and a senior HR business partner from a Kansas City, Missouri facility, and showed

---

[10]    Chimes is an internal communications application that allows defendant's employees to communicate with each other. Dkt. # 26-1, at 4.

them screenshots of Cole's Chimes messages, which Bailey found were not offensive, inappropriate, or indicative of any discrimination. Dkt. # 26, at 16; Dkt. # 26-1, at 4.

On an unspecified date during plaintiff's employment, Matt Stone, an associate supervised by plaintiff, complained that plaintiff cussed at and belittled him all night, and plaintiff was questioned by Cole.[11]  Dkt. # 26, at 15-16; Dkt. # 26-2, at 78-82; Dkt. # 26-22, at 2.  Also, on unspecified dates, the following Chimes messages were exchanged among various employees and, purportedly, Cole.  See Dkt. # 36, at 6, 8 (describing the messages as among Bauer, Reitmeier, Harris, and Cole).  In one Chimes message, Reitmeier asked Cole: "Regarding Ken[12] - Do you want to start a CI case?" and Cole replied: "I am going to open one for Ken, yes . . ." followed by a smiley face emoji.  Dkt. # 36-4.  In another message, Cole asked Harris: "Can you type up a summary of all of Kens [sic] concerns and send them to me please? Confidentially he is bypassing me and escalating to the ERC.  I'm livid, because he hasn't brought anything to me and hasn't even given me a chance." Dkt. # 36-3.  In another message, Cole asked Bauer: "Did Ken say anything to you last night about the Clown Costume?"  Dkt. # 36-2.  Bauer replied: "No - last I talked to him he was okay with it?"  Id.  Cole responded: "Okay. Thanks - I'll be speaking with him tonight.  I promise there is a reason why I asked for it to be removed."  Id.

---

[11]    Plaintiff testified that, "[f]rom [his] knowledge[,]" a "CI" complaint was opened in March concerning his allegedly aggressive behavior.  Dkt. # 26-2, at 79-80.  However, plaintiff bases his testimony on a Chimes message exchanged between Reitmeier and Cole.  Id.  No evidence indicates that defendant opened an investigation, and plaintiff cannot raise a genuine dispute as to a material fact solely on the basis of plaintiff's self-serving testimony about facts outside of his personal knowledge.  See Hall, 935 F.2d at 1111.

[12]    The Court infers that "Ken," a shortened form of plaintiff's first name, Kendall, refers to plaintiff.

In August 2022, plaintiff filed a civil rights enforcement complaint with the Oklahoma Attorney General's office. Dkt. # 26-20, at 3. In September 2022, plaintiff requested a leave of absence pursuant to his medical provider's recommendation. Dkt. # 26, at 17; Dkt. # 26-7, at 4; Dkt. # 26-17, at 15-16. Defendant granted plaintiff's request to take leave, and plaintiff has not asked to return to work. Dkt. # 26, at 17; Dkt. # 26-17, at 15-16. In November 2022, plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission. Dkt. # 26-16, at 2.

On April 2, 2024, plaintiff filed this action against defendant in Tulsa County district court, and, on April 24, 2024, defendant removed this action to federal court. Dkt. # 2, at 1. Defendant filed a motion to dismiss, which the Court granted in part and denied in part. Dkt. # 15. Following the Court's dismissal opinion and order, only plaintiff's claims for disparate treatment on the basis of race and color under the OADA, Title VII, and § 1981, and retaliation on the basis of race and color under § 1981, remain.[13] Id. at 15.

On January 6, 2025, defendant filed a motion for summary judgment, including 29 attached exhibits. Dkt. ## 26, 26-1 - 26-29. Plaintiff filed a response, generally relying on unsupported and vague allegations and attaching Bauer's deposition and three Chimes messages.[14] Dkt. ## 36, 36-1 -

---

[13]    On February 13, 2025, Magistrate Judge Christine Little granted in part and denied in part (Dkt. # 42) plaintiff's motion to withdraw/amend admissions (Dkt. # 29), deeming plaintiff's response to request for admission number 16—"plaintiff has no evidence that he was subjected to 'discriminatory treatment'"—a denial.

[14]    In his response, plaintiff does not argue any of the following: he was denied the ability to roll-over his paid time off; his formal write-ups were deleted; Bauer prevented him from writing up an employee; an investigation occurred as to a gift plaintiff gave Whiteman; he was told affinity groups did not exist; an HR employee failed to purchase him a secret Santa gift because of his race; Harris reprimanded him for attempting to help in a medical

(continued...)

36-4. Plaintiff's factual allegations include that: "he was repeatedly denied training opportunities and staff benefits that were provided to similarly-situated employees[;]" he "was transferred to the night shift due to his race and despite his childcare concerns while other similarly-situated, nonminority employees were not transferred [;]" he was denied "supplemental training to handle the new job duties associated with the transfer, preventing him from exceeding at his job to the extent he otherwise could have" and "hinder[ing] his future employment prospects[;]" he "was subject[ed] to false and malicious rumors spread by co-workers and HR personnel[;]" and "he was told to dress up as a clown for Black History Month."  Dkt. # 36, at 4, 6. Additionally, plaintiff alleges: that he was denied fresh pizza "while similarly-situated, nonminority managers were allowed to take boxes of the fresh pizza . . . [;]" that "Bauer distributed Amazon-branded backpacks with additional enclosed swag to similarly-situated, nonminority employees, but neglected to distribute them to [p]laintiff and other minority employees[;]" and that TUL5 distributed Thanksgiving pies to similarly-situated, nonminority employees, but neglected to distribute any to plaintiff.  Id. at 5-6.  As to plaintiff's retaliation claims, plaintiff alleges that, after he filed his ethics complaint: defendant "promptly opened an investigation into [p]laintiff['s] . . . allegedly aggressive behavior towards other team members[;]" "an HR staff member called him crazy[;]" "HR and other management refused to speak to [p]laintiff . . . [;]" Cole expressed her "readiness to investigate

---

14      (...continued)
emergency; Whiteman was allowed to participate in a mentorship program that Cole told him did not exist; or defendant retaliated against him by investigating the leaked Chimes messages.  Just as courts may not act as a pro se plaintiff's advocate, the Court cannot act as plaintiff's advocate and create arguments from the record that plaintiff does not raise in his response.  See Hall, 935 F.2d at 1110 ("[W]e do not believe it is the proper function of the district court to assume the role of advocate for the pro se litigant.").

[p]laintiff" in Chimes messages; and "the investigation that was opened ultimately came out unsubstantiated." Id. at 7-8. Defendant filed a reply, attaching a single exhibit. Dkt. ## 39, 39-1.

## II.

Summary judgment pursuant to FED. R. CIV. P. 56 is appropriate where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 323. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy[,] and inexpensive determination of every action." Id. at 327 (internal quotations omitted).

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (citations omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Id. at 587. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or

11

whether it is so one-sided that one party must prevail as a matter of law." Id. at 250. In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998).

### III.

Plaintiff raises claims of: disparate treatment on the basis of race and color under the OADA, Title VII, and § 1981; and retaliation on the basis of race and color under § 1981. Dkt. # 15, at 15. Defendant requests that the Court grant summary judgment on all of plaintiff's claims because no genuine dispute as to any material fact exists to preclude judgment as a matter of law. Dkt. # 26, at 7. Plaintiff responds that genuine disputes of material fact exist, precluding summary judgment. Dkt. # 36, at 1.

### A. Disparate treatment on the basis of race and color under the OADA, Title VII, and § 1981

"To survive summary judgment on a Title VII claim of discrimination based on race [or] color . . . , [] plaintiff must present either direct evidence of discrimination or indirect evidence that satisfies the burden-shifting [McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973),] framework . . . ." Bekkem v. Wilkie, 915 F.3d 1258, 1267 (2019). The parties agree that the McDonnell Douglas framework applies to plaintiff's claims. Dkt. # 26, at 19; Dkt. # 36, at 2. Therefore, plaintiff "must carry the initial burden . . . of establishing a prima facie case of racial discrimination." McDonnell Douglas Corp., 411 U.S. at 802. "Once [] plaintiff has established a prima facie case, the burden then must shift to [defendant] to articulate some legitimate, nondiscriminatory reason for its employment action. If [] defendant makes this showing, [] plaintiff must then show that [] defendant's justification is pretextual." Kendrick v. Penske Transp. Servs.,

12

Inc., 220 F.3d 1220, 1225-26 (10th Cir. 2000) (internal quotation marks and citations omitted).  The

Court assesses claims for disparate treatment on the basis of race and color under the OADA,[15] Title

VII,[16] and § 1981[17] congruently.  See Drake v. City of Fort Collins, 927 F.2d 1156, 1162 (10th Cir.

1991) ("[I]n racial discrimination suits, the elements of a plaintiff's case are the same, based on the

disparate treatment elements outlined in McDonnell Douglas, whether that case is brought under

§[] 1981 [] or Title VII."); Jones v. Needham, 856 F.3d 1284, 1292 (10th Cir. 2017) ("The OADA

is analyzed similarly to Title VII claims").

### 1. Prima facie case

The Court first analyzes whether plaintiff established a prima facie case.  To establish a

prima facie case of discrimination, plaintiff must show that: (1) he "is a member of a protected

class," (2) he "suffered an adverse employment action," and (3) "the challenged action occurred

under circumstances giving rise to an inference of discrimination."  Bennett v. Windstream

Commc'ns., Inc., 792 F.3d 1261, 1266 (10th Cir. 2015).  "Under the disparate treatment theory, the

---

[15]    Under the OADA, "[i]t is a discriminatory practice for an employer: . . . [t]o fail or refuse to hire, to discharge, or otherwise to discriminate against an individual with respect to compensation or the terms, conditions, privileges[,] or responsibilities of employment . . . [or] [t]o limit, segregate, or classify an employee . . . in a way which would deprive or tend to deprive an individual of employment opportunities or otherwise adversely affect the status of an employee, because of race [or] color . . . ."  OKLA. STAT. ANN. tit. 25, § 1302(A).

[16]    Under Title VII, it is unlawful for an employer: "(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment[] . . ." or "(2) to limit, segregate, or classify his employees . . . in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race [or] color . . . ."  42 U.S.C. § 2000e-2(a).

[17]    Section 1981 provides that "[a]ll persons . . . shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens . . . ."  42 U.S.C. § 1981.

thrust of plaintiff's case is that, compared to other like-qualified applicants, plaintiff was treated differently because of his race." Drake, 927 F.2d at 1160. Defendant argues that plaintiff "cannot meet his burden on the second and third elements of his prima facie claims." Dkt. # 26, at 20. Plaintiff responds that he "has demonstrated that he suffered adverse employment actions that occurred under circumstances giving rise to an inference of discrimination."[18] Dkt. # 36, at 3. Because defendant does not dispute that plaintiff is a member of a protected class, the Court will analyze only the second and third elements of plaintiff's prima facie case.

a. Adverse employment action (second element)

To fulfill the second element, plaintiff must show that the complained of actions "brought about some 'disadvantageous' change in an employment term or condition." Muldrow v. City of St. Louis, Missouri, 601 U.S. 346, 354 (2024). Plaintiff does not have to show "that the harm incurred was 'significant[,]'" and the phrase "employment term or condition" encompasses more than the economic or tangible. Id. at 354-55. However, plaintiff must still "show some harm respecting an identifiable term or condition of employment." Id. Therefore, "even without importing the significance requirement into the definition of adverse[,] 'a mere inconvenience or an alteration of job responsibilities does not qualify.'" Mirza v. UWorld, LLC, No.

---

[18]    Instead of citing to materials in the record to establish his prima facie case as required by FED. R. CIV. P. 56(c), plaintiff relies solely on allegations. Dkt. # 36, at 4. "The prima facie case under McDonnell Douglas, however, is an evidentiary standard, not a pleading requirement." Swierkiewicz v. Sorema N. A., 534 U.S. 506, 510 (2002). As plaintiff "fails to make a showing sufficient to establish the existence of an element essential to [his] case, and on which [he would] bear the burden of proof at trial[,]" the Court could find, without further analysis, that plaintiff's "complete failure of proof concerning an essential element" entitles defendant to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Nevertheless, the Court will analyze plaintiff's claims under the McDonnell Douglas framework and consider all of the evidence in the record to determine whether summary judgment is appropriate.

23-CV-2208-EFM, 2024 WL 4144203, at *6 (D. Kan. Sept. 11, 2024) (unpublished) (quoting Ford v. Jackson Nat'l Life Ins. Co., 45 F.4th 1202, 1222 (10th Cir. 2022)).  "That is, 'not everything that makes an employee unhappy is an actionable adverse action.'"  Id. (quoting Braxton v. Nortek Air Sols., LLC, 769 F. App'x 600, 604 (10th Cir. 2019) (unpublished)).

Plaintiff alleges that he was: repeatedly denied training opportunities and staff benefits; transferred to the night-shift; subjected to false and malicious rumors spread by co-workers and HR personnel; and told to dress up as a clown for Black History Month.  Dkt. # 36, at 4.  While plaintiff does not expressly argue that these actions constitute adverse employment actions, the Court infers that plaintiff intended these actions to fulfill the second element of his prima facie case.  The Court will consider each alleged adverse employment action in turn.

i. Training opportunities

Plaintiff alleges that he was repeatedly denied training opportunities, but he fails to explain what opportunities he was denied.  Dkt. # 36, at 4.  The Court infers from plaintiff's arguments pertaining to pretext that plaintiff refers to the lack of additional training for area managers rotating between the day and night shift.  Id. at 6.  At the time that plaintiff rotated to the night shift, defendant did not offer training to area managers when they rotated shifts.  Dkt. # 26, at 14; Dkt. # 26-1, at 3; Dkt. # 26-13, at 3.  The parties agree that plaintiff was successful on the night shift.  Dkt. # 26, at 14; Dkt. # 26-1, at 3; Dkt. # 26-2, at 57; Dkt. # 26-13, at 3.  Further, while plaintiff testified that the lack of training initially hindered his performance (Dkt. # 36, at 6), no objective evidence indicates that plaintiff suffered any demonstrable harm.  Ford, 45 F.4th at 1220 (finding that a plaintiff failed to establish a dispute as to material fact because she offered no objective evidence to support her testimony).  Thus, the alleged denial of training is not an adverse

15

employment action. See Bruce v. Unified Sch. Dist. 259, No. 16-CV-1121-EFM, 2018 WL 2463305, at *12 (D. Kan. June 1, 2018) (unpublished) ("The denial of training, by itself, does not constitute an adverse employment action. To constitute an adverse action, an employee must show they were denied training and the lack of training negatively affected the employee's advancement opportunities or otherwise injured the plaintiff.").

### ii. Staff benefits (fresh pizza, Thanksgiving pies, and swag)

Plaintiff alleges that he was repeatedly denied "staff benefits," but he does not explain to which benefits he refers. Dkt. # 36, at 4. The Court infers from plaintiff's arguments pertaining to pretext that plaintiff refers to the alleged denial of fresh pizza, Thanksgiving pies, and a backpack with enclosed swag. Id. at 5. Even assuming for the purpose of this analysis that plaintiff was denied these "benefits," the denial of fresh pizza, pies, and swag does not relate to a term or condition of plaintiff's employment. See Muldrow, 601 U.S. at 354-55. Thus, the alleged denial of "staff benefits" does not constitute an adverse employment action.

### iii. Night shift rotation

Plaintiff alleges that defendant transferred him to the night shift despite his childcare concerns. Dkt. # 36, at 4. Plaintiff's offer letter from defendant warned plaintiff that, while defendant would do its best to match shifts with personal preference, defendant reserved the right to assign employees to shifts and schedules based on business needs. Dkt. # 26, at 13-14; Dkt. # 26-18, at 3. Bailey rotated plaintiff and other managers to the night shift as part of defendant's regular rotation schedule, and plaintiff worked the night shift for approximately four months. Dkt. # 26, at 14; Dkt. # 26-1, at 3; Dkt. # 26-2, at 54, 56. The shift rotation altered the timing of plaintiff's work and, according to plaintiff's testimony, the nature of his work—day shifts involved

16

processing "everything [] coming in from trucks" while night shifts involved "preparing everything that is going out . . . ." Dkt. # 26-2, at 16-17. Nevertheless, as plaintiff's job responsibilities included working different shifts based on business needs, the shift rotation does not constitute an adverse employment action because no "disadvantageous change in an employment term or condition" occurred. See Muldrow, 601 U.S. at 354. Rather, plaintiff simply performed one of his job responsibilities by rotating to the night shift and then rotating back to the day shift.

          iv. Rumors

Plaintiff claims that he was subjected to false and malicious rumors spread by co-workers and HR personnel. Dkt. # 36, at 4. However, plaintiff fails to explain to which rumors he refers. Id. The Court infers from plaintiff's arguments pertaining to pretext that plaintiff refers to James telling him that Cole called him crazy, and Cole's failure to investigate plaintiff's complaint. Dkt. # 36, at 7-8. As to Cole's alleged comment, no evidence indicates that she made the alleged comment and, thus, it cannot constitute an adverse employment action. As to Cole's failure to investigate plaintiff's complaint, plaintiff testified that either the rumor or the failure to investigate "caus[ed] [him] stress" and "negatively" affected his PTSD. Dkt. #26-2, at 47. However, no objective evidence indicates that Cole's failure to investigate harmed plaintiff or that the rumors were ever spread. Ford, 45 F.4th at 1220 ("We cannot simply take an employee at his or her own word."). Therefore, Cole's failure to investigate plaintiff's complaint does not constitute an adverse employment action because it did not harm plaintiff. See Daniels v. United Parcel Serv., Inc., 701 F.3d 620, 640-41 (10th Cir. 2012) (holding, within the context of a retaliation claim, that "a failure to investigate a complaint, unless it leads to demonstrable harm, leaves an employee no worse off

than before the complaint was filed"), abrogated on other grounds by Muldrow, 601 U.S. 346 (2024).

### v. Request to dress up as a clown

Plaintiff alleges that he was told to dress up as a clown for Black History Month. Dkt. # 36, at 4. However, no evidence supports this allegation. Rather, the record demonstrates that: Bauer asked plaintiff and other managers to participate in a dress-your-manager employee engagement event, which may have included a clown costume; plaintiff declined to participate; and the event never occurred. Dkt. # 26, at 11-12; Dkt. # 26-10, at 8-12, 25-26; Dkt. # 26-15, at 2; Dkt. # 36-1, at 18-20. The Court finds that Bauer's request does not constitute an adverse employment action because the declined request did not alter an employment term or condition or cause plaintiff any evidenced harm.

Therefore, the Court finds that no genuine dispute as to any material fact exists that would preclude judgment as a mater of law. Viewing the evidence in the light most favorable to the plaintiff, plaintiff fails to show a single adverse employment action.

### b. Inference of discrimination (third element)

To fulfill the third element, plaintiff must show that "the challenged action occurred under circumstances giving rise to an inference of discrimination." Bennett, 792 F.3d at 1266. A plaintiff may fulfill this element by showing "actions or remarks made by decision[]makers that could be viewed as reflecting a discriminatory animus . . ." or "preferential treatment given to employees outside the protected class . . . ." Plotke v. White, 405 F.3d 1092, 1101 (10th Cir. 2005) (quoting Chertkova v. Conn. Gen. Life Ins. Co., 92 F.3d 81, 91 (2d Cir. 1996)). Plaintiff asserts that the alleged adverse actions demonstrate a pattern of discriminatory treatment on the basis of race and

color. Dkt. # 36, at 4. However, with the exception of the swag and Cole's failure to investigate, the record demonstrates that defendant treated plaintiff the same as all other area managers. Further, plaintiff offers no evidence that any decision maker made any statement reflecting discriminatory animus, and plaintiff admitted that Finley, Baker, Cole, and Harris did not make racially insensitive comments to him. Dkt. # 26, at 18; Dkt. # 26, at 18-19; Dkt. # 26-2, at 5, 14, 48. The Court cannot infer that the alleged adverse actions occurred under circumstances giving rise to an inference of discrimination from: Bauer neglecting to distribute a backpack with enclosed swag to plaintiff while distributing backpacks to other African American employees;[19] and Cole failing to investigate plaintiff's complaint. Dkt. # 26, at 11, 13; Dkt. # 26-2, at 32-35, 41; Dkt. # 26-9, at 6; Dkt. # 26-10, at 17-20; Dkt. # 36-1, at 6. Therefore, the Court finds that plaintiff fails to satisfy his burden of establishing the second and third elements of his prima facie case.

### 2. Legitimate nondiscriminatory reasons

Nevertheless, the Court will analyze whether defendant articulated "some legitimate, nondiscriminatory reason for its employment action." Kendrick, 220 F.3d at 1226 (internal quotation marks omitted). Defendant provides the following justifications for the alleged adverse employment actions. "[T]he alleged denial of workplace perks . . . and the failure to investigate [p]laintiff's harassment concern were [] the result of mistaken beliefs on the part of [p]laintiff and/or others." Dkt. # 26, at 30 (citing defendant's undisputed material facts stating that: area managers were asked to not take any pie or pizza until Amazon associates had done so; Bauer's failure to give plaintiff swag was merely an oversight; and plaintiff reported his concerns to James—a new HR associate who was not well-versed on processes surrounding complaints, and

---

[19]    The Court assumes for the purpose of this analysis that plaintiff never received a backpack.

James reported the complaint to Cole on a post-it note).  "Plaintiff was transferred to the night[ ] shift because every [area manager] rotates shifts and because he was the highest performing [area manager]."  Id.  Plaintiff "was not provided with additional training when transferred to the night shift because none was needed."  Id.  And Bauer asked plaintiff if he would be willing to participate in a dress-your-manager engagement event.  Id. at 11.  Plaintiff does not argue that defendant failed to carry its burden, and the Court finds that defendant articulated legitimate, nondiscriminatory reasons for its actions.

### 3. Pretext

If plaintiff had established his prima facie case, plaintiff would then be required to show that defendant's justifications are pretextual.  Kendrick, 220 F.3d at 1226.  "To show pretext, [] plaintiff must establish that the employer's proffered reasons 'were so incoherent, weak, inconsistent, or contradictory that a rational fact[]finder could conclude the reasons were unworthy of belief.'"  Ford, 45 F.4th at 1216 (10th Cir. 2022) (quoting Bekkem, 915 F.3d at 1267).  "Mere conjecture that the employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment."  Bekkem, 915 F.3d at 1268 (quoting Morgan v. Hilti, Inc., 108 F.3d 1319, 1323 (10th Cir. 1997)).  The Court considers the totality of plaintiff's evidence when analyzing pretext.  Id. at 1270 (quoting Orr v. City of Albuquerque, 531 F.3d 1210, 1215 (10th Cir. 2008)).

Plaintiff argues that defendant's explanations are weak and contradictory.  Dkt. # 36, at 5. He attempts to demonstrate that defendant's proffered reasons are pretextual by countering them with allegations and comparing his treatment to that of his coworkers.  Id. at 5-6.  However, plaintiff does not identify the purported similarly-situated, nonminority managers or employees who

received fresh pizza, Thanksgiving pies, or swag, or whose shifts were not rotated, and plaintiff does not show that these unidentified individuals were similarly-situated to plaintiff. Bekkem, 915 F.3d at 1275 ("A plaintiff's assertion that she is 'similarly situated' to other employees is 'just a legal conclusion . . . .'"). Further, no evidence in the record supports plaintiff's allegation that defendant rotated him to the night-shift because of his race or that Bauer asked him to dress up as a clown for Black History Month, and defendant's lack of training for area managers rotating shifts is not indicative of discriminatory animus. Dkt. # 36, at 6. Additionally, plaintiff argues that: "[d]efendant can produce no corroborating evidence that plaintiff was given [a backpack;]" "[d]efendant has produced scant evidence of . . ." a dress-your-manager event; and "[p]laintiff's employment contract . . . is far from proof that the reason for [p]laintiff's transfer was nondiscriminatory . . . ." Id. at 5-6. However, plaintiff, not defendant, bears the burden of showing that defendant's proffered reasons are merely pretext. Kendrick, 220 F.3d at 1226. Finally, while plaintiff and defendant offer conflicting testimony concerning whether plaintiff ultimately received a backpack, no rational fact finder could infer discriminatory animus from Bauer providing backpacks to other African American area managers but failing to ever provide one to plaintiff. Compare Dkt. # 26-2, at 33-34, with, Dkt. # 26, at 11; Dkt. # 26-10, at 20; Dkt. # 26-13, at 3. Thus, plaintiff fails to satisfy his burden of showing that defendant's proffered legitimate, nondiscriminatory reasons were pretextual.

Therefore, the Court finds that no genuine dispute as to any material fact exists that would preclude judgment as a matter of law, and the Court grants defendant's motion for summary judgment as to plaintiff's disparate treatment claims under the OADA, Title VII, and § 1981.

21

**B.    Retaliation under § 1981**

To survive summary judgment on a § 1981 retaliation claim, plaintiff must present direct evidence or circumstantial evidence through the <u>McDonnell Douglas</u> burden-shifting framework. <u>Thomas v. Berry Plastics Corp.</u>, 803 F.3d 510, 514 (10th Cir. 2015).  The parties agree that the <u>McDonnell Douglas</u> framework applies to plaintiff's retaliation claim.  Dkt. # 26, at 19; Dkt. # 36, at 2.  Thus, plaintiff bears the burden of establishing a prima facie case of retaliation.  <u>Twigg v. Hawker Beechcraft Corp.</u>, 659 F.3d 987, 998 (10th Cir. 2011).  If plaintiff establishes his prima facie case, "the burden [] shifts to [defendant] to articulate a legitimate non-retaliatory reason for taking the adverse employment action before [] shifting back to the plaintiff to establish that the employer's explanation is pretextual . . . ."  <u>Thomas</u>, 803 F.3d at 514.

**1. Prima facie case**

The Court first analyzes whether plaintiff established a prima facie case of retaliation.  To establish a prima facie case, plaintiff must demonstrate that: "(1) []he engaged in protected opposition to discrimination[;] (2) that a reasonable employee would have found the challenged action materially adverse[;] and (3) that a causal connection existed between the protected activity and the materially adverse action."  <u>Twigg</u>, 659 F.3d at 998 (quoting <u>Somoza v. Univ. of Denver</u>, 513 F.3d 1206, 1212 (10th Cir. 2008)).  Defendant argues that plaintiff "cannot raise a genuine dispute as to material fact with respect to the second and third elements of his prima facie claim."  Dkt. # 26, at 26.  Plaintiff responds that he "has demonstrated that he was subject to materially

22

adverse actions as a direct result of his engagement in protected opposition to discrimination."[20] Dkt. # 36, at 7. The parties agree that plaintiff's filing of his March 16, 2022, ethics complaint constitutes a protected activity, and, thus, satisfies the first element. Dkt. # 26, at 29; Dkt. # 36, at 7.

As to the second element, "an adverse employment action is something that would have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" Lincoln v. Maketa, 880 F.3d 533, 540 (10th Cir. 2018) (quoting Burlington N. & Santa Fe Ry. Co., 548 U.S. at 68) (articulating the standard for a Title VII retaliation claim); Twigg, 659 F.3d at 998 ("[T]he principles set forth in Title VII retaliation cases apply with equal force in § 1981 retaliation cases."). Plaintiff argues that the alleged adverse actions—defendant opening an investigation into plaintiff's allegedly aggressive behavior and an HR staff member calling him crazy—taken together would dissuade a reasonable employee from making or supporting a charge of discrimination. Dkt. # 36, at 7-8. Defendant replies that plaintiff "has failed to raise a genuine dispute of material fact on the issue of whether he was subjected to a materially adverse action in retaliation for engaging in a protected activity." Dkt. # 39, at 4. The Court finds that no evidence shows that either alleged adverse action occurred. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986) ("[A] party opposing a properly supported motion for summary judgment may not rest upon mere allegation

---

[20] Similar to plaintiff's disparate treatment prima facie case, plaintiff fails to cite any evidence within the record to support his prima facie case of retaliation as required under FED. R. CIV. P. 56(c). Rather, he relies entirely on his own allegations to fulfill his evidentiary burden of establishing a prima facie case. Swierkiewicz, 534 U.S. at 510. For the same reasons discussed above, supra n.18, the Court could find, without further analysis, that plaintiff's "complete failure of proof concerning an essential element" entitles defendant to judgment as a matter of law. Celotex Corp., 477 U.S. at 322-23. Nevertheless, the Court will analyze plaintiff's claims under the McDonnell Douglas framework and consider all of the evidence in the record to determine whether summary judgment is appropriate.

or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial."). Rather, the evidence merely shows that Cole, on an unidentified date, questioned plaintiff regarding his alleged aggressive behavior. Dkt. # 26, at 15-16; Dkt. # 26-2, at 78-82; Dkt. # 26-22, at 2. The Court finds that this action would not dissuade a reasonable employee from making or supporting a charge of discrimination. Therefore, plaintiff fails to establish the second element.

As to the third element, plaintiff must show a causal connection between his ethics complaint and the putative materially adverse actions. Twigg, 659 F.3d at 998. Plaintiff "may establish the casual connection by proffering evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action." Annett v. Univ. of Kan., 371 F.3d 1233, 1239-40 (10th Cir. 2004) (internal quotation marks omitted). However, "[u]nless there is very close temporal proximity between the protected activity and the retaliatory conduct, [] plaintiff must offer additional evidence to establish causation." O'Neal v. Ferguson Constr. Co., 237 F.3d 1248, 1253 (10th Cir. 2001). Plaintiff argues that he "has demonstrated that he was subject to materially adverse actions as a direct result of his engagement in protected opposition to discrimination." Dkt. # 36, at 7. Defendant replies that plaintiff "cites no evidence to establish a connection between the putative materially adverse actions and [p]laintiff's ethics complaint." Dkt. # 39, at 5. As discussed above, the record demonstrates that Cole questioned plaintiff on an unspecified date. Without more, the Court cannot infer any casual connection between plaintiff filing his ethics complaint and Cole questioning him regarding his behavior towards an associate. Thus, plaintiff fails to establish the third element, and the Court finds that no genuine dispute of material fact exists that would preclude judgment as a mater of law that plaintiff fails to carry his burden of establishing a prima facie case.

## 2. Legitimate, nondiscriminatory reason

Nevertheless, the Court will consider whether defendant articulated a legitimate, nondiscriminatory reason for Cole questioning plaintiff regarding his allegedly aggressive behavior. Thomas, 803 F.3d at 514. Defendant proffers that "any investigations into [p]laintiff were taken as a direct result of complaints by other employees[,]" and plaintiff does not argue that defendant failed to fulfill its burden. Dkt. # 26, at 31; Dkt. # 36, at 7-8. Therefore, the Court finds that defendant articulated a legitimate, nondiscriminatory reason for Cole questioning plaintiff.

## 3. Pretext

If plaintiff had established his prima facie case, plaintiff would then be required to show that defendant's justification is pretextual. Thomas, 803 F.3d at 514. Plaintiff "may demonstrate pretext by showing [that defendant's] proffered reason was so inconsistent, implausible, incoherent, or contradictory that it is unworthy of belief." Stover v. Martinez, 382 F.3d 1064, 1071 (10th Cir. 2004). Plaintiff argues that the Chimes messages demonstrate HR's eagerness to investigate plaintiff following the filing of his ethics complaint, and that this allegation is further corroborated by the fact that HR and other management refused to speak to plaintiff after he filed his complaint, and because the investigation "ultimately came out unsubstantiated." Dkt. # 36, at 8. However, the Court is without sufficient context to interpret the Chimes messages (Dkt. ## 36-3, 36-4) as indicative of retaliatory animus, and no evidence shows that anyone subjected plaintiff to the silent treatment or that the investigation occurred. Regardless, plaintiff admitted that employees were upset with him following the break room incident, acknowledged that an associate complained about his aggressive behavior causing Cole to question him, and agreed that, when defendant receives a complaint about allegedly aggressive behavior, defendant should investigate that

25

complaint. Dkt. # 26, at 15-16; Dkt. # 26-2, at 80-82. Consequently, even if defendant opened an investigation into plaintiff based on an unsubstantiated complaint concerning plaintiff's behavior, the investigation itself was not unfounded. Thus, plaintiff fails to show that defendant's legitimate, nondiscriminatory reason was pretextual.

Therefore, the Court finds that no genuine dispute as to any material fact exists that would preclude judgment as a matter of law, and the Court grants defendant's motion for summary judgment as to plaintiff's retaliation claim under § 1981.

**IT IS THEREFORE ORDERED** that defendant's motion for summary judgment (Dkt. # 26) is **granted**. A separate judgment is entered herewith.

**IT IS FURTHER ORDERED** that defendant's combined motions in limine (Dkt. # 43) are **moot**.

**DATED** this 19th day of March, 2025.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE